IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| WESLEY THOMAS PATTERSON, #338036 | § | |
| VS. | § | CIVIL ACTION NO. 9:08cv3 |
| TDCJ MEDICAL FACILITIES AND PRACTICES, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Wesley Thomas Patterson, an inmate confined at the Polunsky Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

*Spears* Hearing

The original complaint was filed on January 4, 2008. The Plaintiff complained about the medical care he had received for various problems. On April 17, 2008, the Court conducted an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. Regional Grievance Coordinator Chip Satterwhite, Warden Richard Alford and Nurse Kathy Gray attended the hearing in order to answer any questions the Court may have concerning prison policy or the Plaintiff's records. Only sworn testimony and authenticated records were accepted during the *Spears* hearing, and the evidence submitted by prison personnel was considered by the Court only to the extent that it does not contradict the inherently plausible and

credible evidence offered by the Plaintiff. *Vernado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). The Plaintiff gave the Court permission to review his prison records.

The Plaintiff initially testified about medical care he received for a hernia. He testified that the hernia was above his pelvis on the right side. He added that the problem had not been corrected. Medical personnel told him that no further treatment was needed. He subsequently broke his arm. He was not taken to the medical department until five days later. A doctor told him that it was too late to do anything after four or five days. His arm was placed in a sling. The Plaintiff testified that his arm hurts all of the time. He added that his arm has never been fixed. The bone in his left forearm near his elbow is still loose. He added that he cannot work because of the arm and that he is unable to pick up anything that is heavy.

Nurse Gray testified from the Plaintiff's original medical records. The records show that he had a right inguinal hernia, which means a hernia in the groin area. The notation in the records indicate that the hernia is easily reducible. In other words, it can easily be placed back where it belongs. It is not likely to become strangulating. The hernia was not life threatening, and no surgery was deemed necessary. The records show that the Plaintiff sustained a fracture to his left elbow after falling in April, 2007. The Plaintiff saw an orthopaedic surgeon on June 1, 2007. The surgeon concluded that the Plaintiff could not undergo surgery due to other problems. The Plaintiff subsequently had a heart catherization, cardiac cap and stints. He also had thyroid problems, which were stabilized with medication. The Plaintiff was referred back to the orthopaedic department and approved for surgery. In September, 2007, he was referred back from the orthopedic department for clearance for surgery. He was discharged by the cardiac department on January 23, 2008. Nurse Gray testified that it could take three or four months before surgery is actually performed.

The Plaintiff testified in response that there were cardiac concerns. Dr. Jerry White checked on the status of his surgery on March 3, 2008. The Plaintiff was still approved for surgery.

## *Martinez* Report

After considering the evidence presented during the *Spears* hearing, the Court concluded that it did not have sufficient facts to determine whether the Plaintiff should be allowed to proceed with a deliberate indifference claim. The Court determined that additional efforts were necessary to develop the facts. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986). The Court concluded that the most feasible course of action was to require prison officials to provide the Court with certain materials and documents pertinent to a just and fair adjudication of the matters herein presented. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (cited with approval in *Cay*); *Norton v. Dimazana*, 122 F.3d 286 (5th Cir. 1997).

On June 13, 2008, the Office of the Attorney General of Texas submitted an *Amicus Curiae* Martinez Report (hereinafter "the Report"), in accordance with the order of the Court. The Report consisted of applicable TDCJ medical records and UTMB medical records, along with affidavits from Dr. Stanley Allen, M.D., and Dr. Kevin Flemmons, M.D. The first medical record included in the Report was a clinic note, dated August 22, 2006. The clinic note is signed by Dr. Alan Zond. The Plaintiff stated that he had a hernia. Dr. Zond found that the hernia was easily reducible. He informed the Plaintiff that there was no indication for surgery. The Plaintiff responded by becoming verbally abusive, and the visit was terminated. Dr. Flemmons noted in his affidavit that surgery was unnecessary because the hernia remained reducible.

A clinic note, dated April 18, 2007, recorded that the Plaintiff complained about left arm pain, edema and bruising after falling 5 days earlier. The nurse observed moderate edema of the left

elbow, forearm and wrist. The plan was to have x-rays made of the left elbow and forearm. The Plaintiff was provided a sling and a pass for two weeks. He was given Motrin 800 mg. tablets and was medically unassigned for thirty days. Another clinic note was signed by Dr. Behrns on April 26, 2007. He noted hypothyroidism, closed fracture of an unspecified part of the forearm and inguinal hernia. Dr. Allen noted in his affidavit that x-rays revealed that the Plaintiff suffered a transverse fracture through the ulnar olecranon. He noted that the injury was to the most prominent bone of the elbow. Surgical repair, known as Open Reduction and Internal Fixation (ORIF) is the most common means of treatment for such a fracture. Immobilization of the fracture, through the use of a sling, would have little or no effect without the corrective surgery. Dr. Allen added that notes documenting the Plaintiff's lack of compliance could indicate that he was not experiencing significant pain.

      The Plaintiff was transferred to Hospital Galveston so that corrective surgery could be performed. Dr. Flemmons stated in his affidavit that the Plaintiff was admitted on May 31, 2007. Because the surgery carried certain risks, a pre-operative cardiac evaluation was conducted. Dr. Allen noted that it became clear during the evaluation that the Plaintiff had extremely poor heart function, which had to be addressed before the elective orthopaedic procedure would be performed. Dr. Flemmons specified that only 10-15% of his blood was pumped by the ventricle out of his heart with each heart beat, as opposed to the normal ejection fraction of 55-75%. The Plaintiff underwent a heart catherization and cardiac stress test. The Plaintiff had 80% blockage to one of his coronary arteries. He also had severe hypothyroidism. The Plaintiff was not cleared by cardiology when he had his last appointment with Orthopaedics in August, 2007.

Dr. Flemmons noted that the Plaintiff was seen by the Cardiology Clinic on July 25, 2007. The Plaintiff started receiving thyroid replacement therapy, and changes were made to his blood pressure medication. He added that it takes six to eight weeks for a patient to respond to the thyroid therapy. The Plaintiff was seen by the unit medical provider on August 22, 2007, and his thyroid medication was increased. His thyroid remained high when tested on September 26, 2007. A adenosine sestamibi (radioactive stress test) was performed on November 8, 2007, which showed an urgent need for revascularization of the 80% blockage. An implantable cardioverter-defribrillator was recommended, but the Plaintiff declined the recommendation. The Plaintiff was cleared by the Department of Cardiology in January, 2008. Dr. Allen noted that the Plaintiff was scheduled to be seen by Orthopaedics on June 12, 2008. It is noted that the affidavit was signed on June 3, 2008. Dr. Allen stated that the benefits of ORIF would be evaluated during the orthopaedic evaluation.

Dr. Allen concluded his affidavit by noting that the Plaintiff had likely experienced some discomfort and arm weakness as a result of the fracture; nonetheless, it would have been unwise to have an elective corrective procedure on someone whose cardiac condition was so poor. Obvious complications of anesthesia in a patient with these heart problems would be heart failure, myocardial infarction (heart attack), cerebral vascular accident (stroke) and possible death. Prior to any surgery, a risk-benefit analysis must be conducted, and the benefits of this elective surgery on the Plaintiff prior to being cleared by cardiology were outweighed by the risks.

Dr. Flemmons also noted the risks of surgery in light of the Plaintiff's cardiac condition. He noted that there were delays because the Plaintiff did not take his thyroid medication. The Plaintiff told medical personnel that "it doesn't do much good anyway" and "I have not been taking my medicine because I don't want to." He listed numerous appointments where the Plaintiff was a "no

show." On February 7, 2007, the Plaintiff indicated that he did not intend to be compliant to diet or medications. Dr. Flemmons again noted that hernia surgery was unnecessary and surgery on the Plaintiff's elbow fracture or his hernia would have been ill advised while his heart condition remained poor. He added there was not an urgent need for surgery, and the risks outweighed the benefits.

<u>Plaintiff's Response</u>

The order to the prison system to submit the Report also gave the Plaintiff ten days from the receipt of the Report to file any response he may have to it. The Report was filed on June 13, 2008. To date, the Plaintiff has not filed a response.

<u>Discussion and Analysis</u>

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff

6

> must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). The Fifth Circuit has repeatedly held that a disagreement with a doctor's diagnosis or treatment plan does not rise to the level of a constitutional violation. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). When a complaint concerns delays in receiving medical care, a "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

The present case is similar to this Court's decision in *Clark v. Adams*, No. 9:05cv208, 2006 WL 1305164 (E.D. Tex. May 9, 2006), *aff'd*, 233 Fed. Appx. 400 (5th Cir. 2007). Clark sued the attending doctor, who concluded that the hernia was easily reduced or put back into place and that surgery was unnecessary. Clark sued the doctor for failing to refer him for surgery to fix the hernia. The Court concluded that the case was frivolous because the inmate had received extensive medical care, including medication, a truss and medical restrictions, and that his disagreement with the doctor as to whether surgery was necessary failed to surmount the "extremely high standard" required to show deliberate indifference. *Id.* at *6. The Fifth Circuit affirmed the decision while noting that a disagreement with a doctor does not establish a constitutional violation. 233 Fed. Appx. at 401. In the present case, the Plaintiff similarly disagree with the diagnosis of Dr. Zond, but his disagreement did not provide a basis for a potentially meritorious civil rights lawsuit.

The Plaintiff also complained about the medical care he has received for the transverse fracture of the ulnar olecranon bone in his left elbow. It is initially noted that doctors at both the unit level and Hospital Galveston provided the Plaintiff with extensive care for his elbow. Medical personnel were responsive to his needs, as opposed to deliberately indifferent. Orthopaedic surgeons determined that the appropriate surgical repair was an Open Reduction and Internal Fixation. A plan was developed to perform the operation, but there has been delays associated with the Plaintiff's poor health, particularly his cardiac condition. The doctors thus took steps to improve his health in order to make surgery possible. The Plaintiff has not helped matters any by being noncompliant; nonetheless, the doctors endeavored to appropriately treat his condition. Any delays in the surgery were not the product of deliberate indifference.

In conclusion, the Plaintiff's pleadings and testimony, along with the documentation provided in the Report, reveal that TDCJ and UTMB medical personnel have not been deliberately indifferent to the Plaintiff's serious medical needs. The Fifth Circuit's conclusions in *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992), concerning medical care provided for an inmate's back problems are equally applicable in the present case:

> [T]he record shows that he received continuous treatment for his back injury despite his incarceration. The treatment may not have been the best that money could buy, and occasionally, a dose of medication may have been forgotten, but these deficiencies were minimal, they do not show an unreasonable standard of care, and they fall short of establishing deliberate indifference by the prison authorities. Continuing back pain is unpleasant. Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred.

The record in this case likewise fails to show a constitutional violation. The Plaintiff's claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  It is further

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **10** day of **July, 2008.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE